CENTRAL SOYA Co. et al., Appellants,

*v.*

CITY OF CHATTANOOGA et al., Appellees.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

CHAMBLISS, CHAMBLISS & HODGE; SPEARS, MOORE, REBMAN & WILLIAMS; TABER, CHAMBLISS & STOPHEL; WHITAKER, HALL & HAYNES; WITT, GAITHER, ABERNATHY, CALDWELL & WILSON, Chattanooga, for appellants.

EUGENE N. COLLINS, Assistant City Attorney, Chattanooga, J. W. ANDERSON, City Attorney, Chattanooga, of counsel, for appellees.

Mr. Justice Swepston delivered the opinion of the Court.

This appeal comes directly to this Court, because the demurrer to the original bill was sustained by the Chancellor.

The statute involved is Ch. 113, Acts of 1955, otherwise known as the Municipal Annexation Act, T.C.A. sec. 6-301 et seq.

Respective opposing counsel seem to differ as to what is the question to be decided. We think that if the following question is answered in the negative, it is decisive of all other questions in the case. That question is whether or not, under T.C.A. secs. 6-311 and 6-312, a municipality, when petitioned by "interested persons", *must* propose extension of its corporate limits by the referendum method?

The bill alleged in substance that the complainants, consisting of 11 corporations and 15 individuals as interested persons, on November 2, 1959, filed a petition with the City of Chattanooga for an election to be held in accordance with said Code sections 6-311 and 6-312 for the annexation of an area shown on a map attached as Exhibit 1 to the bill. That same was served upon the City officials.

On the next day November 3, 1959, the City commenced proceedings under T.C.A. sec. 6-309 for the purpose of annexing by ordinance a portion of the territory described in the bill.

It is the theory of the bill that the City had no power to proceed in this manner in view of the existing petition filed by complainants requesting a referendum as provided under said Code Sections 6-311 and 6-312 since, it is alleged, such action deprives the complainants and other inhabitants and property owners of this particular territory of an opportunity to express their wishes by an election.

The City filed a demurrer coupled with an answer, the demurrer setting out several grounds which need not be detailed but which in substance are that the City is not obligated to act on complainants' petition requesting annexation by referendum, nor does it appear that complainants will be deprived of any rights or that any specific harm will be sustained by them if defendant City proceeds to annex by ordinance.

The Chancellor sustained practically all of the grounds of the demurrer, hence this appeal.

This question has never arisen in this State heretofore under the annexation act. It does not seem difficult, however, to arrive at the correct answer to same by a reference to the terms of the statute itself and to the conditions which made necessary the enactment of such a statute. Reference is made to an analysis of the same in *Witt v. McCanless*, 200 Tenn. 360, 292 S.W.2d 392, and what is said therein is incorporated by reference herein. In said opinion we refer to the article in 8 Vand. Law Review, 1, by Professor Mendelson in which, among other

things, he states the problem with which municipalities were confronted before the enactment of the present statute in 1955. At that time under existing statutes neither a municipality, nor any of its residents, could initiate annexation proceedings. There was no way the City could protect itself from the unincorporated fringe areas that were composed either of the poor and less desirable areas for habitation which were unsanitary, or the well-to-do adjacent areas, in times past called the "Bon Ton" areas, consisting of well-to-do people who wanted to escape the burden of carrying their share of the taxes for the welfare of the metropolitan community.

With the above in mind, the act was so drawn as to provide for the two methods of annexation of such areas, (1) by ordinance as provided in Sec. 2 (T.C.A. secs. 6-309 and 6-310) and (2) by referendum under Sec. 3 (T.C.A. secs. 6-311 and 6-312).

Clearly, Sec. 2 was designed to give the City discretion to annex by ordinance whenever it is confronted with the problem of either the rich or the poor contiguous outlying area, because the statute provides that it may be done when it appears that the prosperity of the municipality and such territory will be materially retarded and the safety and welfare of the inhabitants and property endangered.

On the other hand, it was evidently contemplated that there might be situations where the prosperity and safety and health problems may not exist to a compelling degree but the City and/or the adjacent area might desire to bring about annexation. Hence Sec. 3 provides that the City, when petitioned either by interested persons or upon its own initiative, may propose an extension of the

corporate limits by means of the election or elections provided for in said Section 3.

It must be noted that in neither Sec. 2 nor Sec. 3 is there any mandatory sense to be drawn from the language of the Act; in both instances it uses the word "may", which according to general usage and common understanding carries the sense of discretion but not of duty, unless the context in which it appears indicates with reasonable clarity the opposite meaning of "must"; (Sec. 6-316 is not relevant to this discussion, except that it also uses the word "may" as to the larger municipality).

Moreover, T.C.A. sec. 6-313 provides:

*"Abandonment of proceedings.*—Any annexation proceeding initiated under sec. 6-309 or sec. 6-311 may be abandoned and discontinued at any time by resolution of the governing body of the municipality."

Therefore, how can it be said with any reasonable degree of substance that interested persons or residents or property owners have acquired any vested rights by the mere filing of a petition requesting an annexation under either Sec. 2 or 3? If one were started under either section it could be abandoned by the City at any time without any permission or consent of those who suggested the annexation.

Nor is it reasonable to suppose that the intent of this act was to place the burden of the expense of holding an election on the municipality merely because some indefinite number of people, maybe 2 or 3, filed a petition or petitions for annexation.

The inference is inescapable from a study of the history of this problem as well as from the terms of the Tennessee statute that the City is the primary beneficiary of such legislation although the adjacent outlying areas may benefit by reason of annexation.

It is accordingly our conclusion that there is no merit to the original bill and that the Chancellor was eminently correct in sustaining the demurrer.

Accordingly, his decree is affirmed.